IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

MEDFORD DIVISION


LARU PERESCHICA; RAFAEL SANDOVAL,

                    Plaintiffs,

          v.

HERSHNER HUNTER, LLP; SELCO COMMUNITY CREDIT UNION,

                    Defendants.

Civ. No. 1:25-cv-00507-AA

**OPINION & ORDER**


AIKEN, District Judge.

This case comes before the Court on partial Motions to Dismiss and Special Motions to Strike filed by Defendants Selco Community Credit Union ("Selco"), ECF No. 14, and Hershner Hunter, LLP ("Hershner"), ECF No. 16. The Court concludes that this motion is appropriate for resolution without oral argument. For the reasons set forth below, the Motions are GRANTED.

## LEGAL STANDARD

To survive a motion to dismiss under the federal pleading standards, a pleading must contain a short and plain statement of the claim and allege "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 667 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550

U.S. 544, 570 (2007)). While a pleading does not require "detailed factual allegations," it needs more than "a formulaic recitation of the elements of a cause of action." *Iqbal*, 556 U.S. at 677-78. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. The plausibility standard . . . asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.* at 678. Legal conclusions without any supporting factual allegations do not need to be accepted as true. *Id.*

## BACKGROUND

The following recitation of facts is derived from the First Amended Complaint ("FAC"), ECF No. 9, and the judicially noticeable exhibits attached to the Ripp Declaration, ECF No. 15, and the Xu Declaration, ECF No. 17.[1]

Plaintiffs Laru Pereschica and Rafael Sandoval are in a long-term relationship with one another and share ownership of a home (the "Property") in Jackson County, Oregon. FAC ¶¶ 9, 37.

Defendant Selco is a credit union. FAC ¶ 11. Mr. Sandoval owed consumer debt to Selco. *Id.* Defendant Hershner is a law firm that was retained by Selco to pursue the collection of Mr. Sandoval's debt. *Id.* ¶¶ 13-16, 33.

On November 16, 2022, Selco commenced a collection action against Mr.

---

[1] The documents in question are dockets, filings, and transcripts from the underlying state court action, *Selco Community Credit Union v. Sandoval*, Case No. 22CV39304. A court may take judicial notice of matters of public record, although not disputed facts within those records, without converting a motion to dismiss into a motion for summary judgment. *Khoja v. Orexigen Therapeutics, Inc.*, 899 F.3d 988, 999 (9th Cir. 2018). Plaintiffs do not object to the Court taking judicial notice of the exhibits to the Ripp and Xu Declarations and cite to those exhibits in their Response brief.

Page 2 –OPINION & ORDER

Sandoval, *Selco Community Credit Union v. Sandoval*, Case No. 22CV39304, in Jackson County Circuit Court. Xu. Decl. Ex. 1, at 1. The collection action concerned an auto loan which, after repossession of the vehicle, resulted in a deficiency of $3,591.08, plus late fees and interest. Xu Decl. Ex. 2.

A default judgment was entered in favor of Selco on January 23, 2023, for $5,331.37, including both the deficiency and the associated fees, costs, and pre-judgment interest, with post-judgment interest accruing. FAC ¶ 32; Xu Decl. Ex. 3, at 2-3.

Selco made unsuccessful efforts to collect the judgment debt via garnishment. Xu Decl. Exs. 4, 5.

On August 30, 2024, Selco retained Nancy Cary, a Hernsher attorney, to represent them in Case No. 22CV39304. FAC ¶ 33; Xu Decl. Ex. 6.

On August 30, 2024, Selco, through Ms. Cary, filed a Motion and Affidavit for Order Authorizing Sale of Residential Real Property Pursuant to ORS 18.906. FAC ¶ 34; Xu Decl. Ex. 7.[2] The motion sought to authorize the sale of Mr. Sandoval's interest in the Property and notes that the Property "is the homestead of Defendant," and that "Defendant has 100% interest in the property with his wife/partner, so the homestead exemption is $50,000.00,"[3] and that "the judgment was more than $3,000.00 at the time of its entry." Xu Decl. Ex. 7, at 3. At the time, the Property

---

[2] The motion identifies the interest in the property to be sold as that of "Jose Rogelio Hernandez," but this appears to have been a scrivener's error. The caption and the supporting documentation, including the notices sent to Plaintiffs, correctly identify the debtor and defendant as Mr. Sandoval. Xu Decl. Exs. 7, 8, 9.

[3] The homestead exemption was increased to $150,000 on January 1, 2025. FAC ¶ 54.

was subject to a Deed of Trust to secure a mortgage of $167,767.00 and two senior judgment liens against Mr. Sandoval for $3,694.41 and $1,888.50. Xu Decl. Ex. 7, at 14-15.

On September 20, 2024, Ms. Cary sent a Notice of Hearing to Ms. Pereschica and to Mr. Sandoval, notifying them that a hearing was scheduled for October 14, 2024, on Selco's request to sell the Property to satisfy the judgment against Mr. Sandoval. FAC ¶ 37; Xu Decl. Exs. 8, 9. The Notices were sent by mail. Xu Decl. Ex. 10. After receiving the Notices, Plaintiffs sought legal counsel. Am. Compl. ¶ 50.

On October 11, 2024, Ms. Pereschica, through attorney Matthew Sutton, filed Objections to the sale of the Property with the circuit court. Xu Decl. Ex. 11. The Objections asserted that Selco had failed to serve the judgment debtor, Mr. Sandoval, with the sale documents; that the Property was owned by Plaintiffs jointly with survivorship interest in an *Erickson* deed arrangement;[4] that the Property was subject to a Deed of Trust; and that the Property was subject to two prior judgment liens. *Id.*

On October 14, 2024, a hearing was held in Case No. 22CV39304, at which Ms. Cary appeared for Selco and Mr. Sutton appeared for Plaintiffs. Xu Decl. Ex. 12. At the time of the hearing, Ms. Cary represented to the circuit court that she had not received the Objections[5] but that her intention in appearing at the hearing was to

---

[4] *Erickson v. Erickson*, 167 Or. 1 (1941).
[5] Mr. Sutton sent the Objections to Ms. Cary via regular mail on Friday, October 11, 2024, and so Ms. Cary had not received them prior to the hearing on Monday, October 14, 2024. Xu Decl. Exs. 11, at 16; 12, at 10-11.

request a continuance because Selco had been unable to properly serve Plaintiffs.[6] Xu Decl. Ex. 12, at 4-6. Mr. Sutton stated that he was not authorized to accept service on behalf of Plaintiffs and requested that the motion be denied. *Id.* at 6. The circuit court declined to deny the motion and instead continued the matter. *Id.* at 6-7.

On December 10, 2024, Ms. Cary filed a Motion to Continue, seeking to continue the case through February 28, 2025. Xu Decl. Ex. 13. In that motion, Ms. Cary stated that Selco's process servers had made eight attempts to serve Mr. Sandoval with their motion to execute and, "although the process server can hear persons inside the residence they refuse to answer the door." *Id.* at 3. The motion to continue was granted by the circuit court on December 12, 2024. Ripp Decl. Ex. 11.

On December 23, 2024, Selco sent Plaintiffs a Notice of Continued Hearing on Sheriff's Sale of Your Property, informing them that the hearing would be held on February 10, 2025.[7] Ripp. Decl. Exs. 12, 13. The Notice of Continued Hearing was mailed to Plaintiffs. Ripp Decl. Ex. 14.

A hearing was held on February 10, 2025, in Case No. 22CV3930, at which Ms. Cary told the circuit court that "[a]ccording to the server and the sheriff, [Plaintiffs are] avoiding service," and that she intended to file a motion for alternative service. Xu Decl. Ex. 14, at 2. Ms. Cary requested that the case be continued and the circuit court set the matter for March 31, 2025. *Id.* at 2-3.

---

[6] Plaintiffs allege that Ms. Cary's purpose in appearing for the hearing was "to seek relief even though Mr. Sandoval had not been served as required by law." FAC ¶ 51. This allegation is contradicted by transcript, although this issue is not relevant to the resolution of the motion.

[7] Like the original Notice, the December 23 Notice stated that the homestead exemption was $50,000 for jointly owned property. Ripp. Decl. Ex. 13, at 2. As previously noted, this was the homestead exemption at the time of the Notice and the homestead exemption increased to $150,000 on January 1, 2025. FAC ¶ 54.

Page 5 –OPINION & ORDER

On February 12, 2025, Selco filed a motion for order authorizing service by mailing and posting due to the inability of the private servers or the sheriff to serve Plaintiffs. Xu Decl. Ex. 15.  The motion was granted by the circuit court on February 21, 2024.  Xu Decl. Ex. 16.  Plaintiffs were served by posting on February 27, 2024.  Xu Decl. Ex. 17, at 2-5.

This federal case was filed on March 26, 2025, only days before the scheduled date of the circuit court hearing in Case No. 22CV39304.  ECF No. 1.

On March 28, 2025, Selco filed a motion in Case No. 22CV39304 withdrawing its August 30, 2024, Motion for Order Authorizing Sale of Residential Sale and requesting that the circuit court cancel the hearing set for March 31, 2025.  Xu Decl. Ex. 18.  The circuit court granted the motion on April 3, 2025.  Ripp. Decl. Ex. 20.

## DISCUSSION

Plaintiff bring claims for (1) violation of the federal Fair Debt Collection Practices Act ("FDCPA") against Hershner; (2) violation of the Oregon Unfair Trade Practices Act ("UTPA") against Hershner; and (3) violation of the Oregon Unlawful Debt Collection Practices Act ("OUDCPA") against Hershner and Selco.  Selco moves to dismiss Plaintiffs' OUDCPA claim under Federal Rule of Civil Procedure 12(b)(6) and moves to strike the OUDCPA claim pursuant to Oregon's anti-SLAPP[8] statute, ORS 31.150.  Hershner moves to strike the UTPA and OUDCPA claims pursuant to ORS 31.150 and moves in the alternative to dismiss the state law claims pursuant to Rule 12(b)(6).

---

[8] "Strategic Lawsuit Against Public Participation"

Page 6 –OPINION & ORDER

### I.    Anti-SLAPP Generally

Oregon's anti-SLAPP statute, ORS 31.150, provides "an expedited procedure for dismissal of certain nonmeritorious civil cases without prejudice at the pleading state." *Neumann v. Liles*, 358 Or. 706, 723 (2016). Under the statute, a defendant may bring a special motion to strike a claim that arises out of, in relevant part, "[a]ny oral statement made, or written statement or other document submitted, in connection with an issue under consideration or review by a legislative, executive or judicial body or other proceeding authorized by law." ORS 31.150(1), (2)(a).

A court considers a special anti-SLAPP motion to strike using a two-step burden-shifting process. *Gardner v. Martino*, 563 F.3d 981, 986 (9th Cir. 2009). First, the defendant has the initial burden to show that the challenged statement is within one of the categories of civil actions described in the anti-SLAPP statute. *Id.* If the defendant satisfies its burden, the burden then shifts to the plaintiff "to establish that there is a probability that the plaintiff will prevail on the claim by presenting substantial evidence to support a prima facie case." *Id.* (quoting ORS 31.150(3)).

The analysis at the second step differs in federal court. *See Planned Parenthood Fed'n of Am., Inc. v. Ctr. for Med. Progress*, 890 F.3d 828, 833-35 (9th Cir. 2018). In federal court, when an anti-SLAPP motion to strike challenges the factual sufficiency of a claim, the Rule 56 standard will apply and "discovery must be allowed . . . before any decision is made by the court." *Id.* However, if the motion challenges the legal sufficiency of the claim, the motion is treated in the same manner as a motion under Rule 12(b)(6), except that the attorney fee provisions of the anti-SLAPP

statute will apply. *Id.* at 834. If a defendant challenges only the legal sufficiency of pleadings, "then the plaintiff can properly respond merely by showing the sufficiency of pleadings, and there's no requirement for a plaintiff to submit evidence to oppose contrary evidence that was never presented by defendants." *Id.*

"A plaintiff opposing an anti-SLAPP motion in federal court must overcome substantive defenses that would prevent the plaintiff from properly stating a claim under Rule 12(b)(6). *Cagle v. Sattler*, 761 F. Supp.3d 1357, 1364 (D. Or. 2025).

## II.    Defendants' Motions are Not Barred by ORS 31.150(3)

As a preliminary matter, Plaintiffs argue that Defendants' anti-SLAPP motions are barred by ORS 31.150(3), which provides

> A special motion to strike may not be made against a claim under this section against a person primarily engaged in the business of selling or leasing goods or services if the claim arises out of a communication related to person's sale or lease of goods or services.

ORS 31.150(3).

The parties agree that there is little guidance from the Oregon courts on the proper interpretation of ORS 31.150(3). Plaintiffs argue that the provision should be interpreted broadly and that commercial speech need only be indirectly related to a defendant's business for it to apply.

This position is contrary to the legislature's direction that ORS 31.150 is "to be liberally construed *in favor* of the exercise of the rights described in ORS 31.150(2)." ORS 31.152(6) (emphasis added); *see also Cider Riot, LLC v. Patriot Prayer USA, LLC*, 330 Or. App. 354, 359 (2024) ("In evaluating special motions to strike under

ORS 31.150, we liberally construe the statute in favor of the exercise of the rights of expression it protects." (internal quotation marks and citations omitted)).

A liberal construction of ORS 31.150 to protect the exercise of the rights described in ORS 31.150(2) would counsel strongly against an expansive view of the commercial speech exception in ORS 31.150(3). Courts interpreting California's anti-SLAPP statute reached a similar conclusion on that statute's commercial speech exception. *Simpson v. Strong-Tie Co., Inc. v. Gore*, 49 Cal.4th 12, 22 (2010) ("The commercial speech exemption, like the public interest exemption is a statutory exception to section 425.16 and should be narrowly construed."). The Court concludes that a liberal construction of ORS 31.150 in favor of the rights described in ORS 31.150(2) requires a narrow construction of the commercial speech exception for ORS 31.150(3).

So construed, the conduct in question does not qualify as commercial speech. Both the OUDCPA and UTPA claims turn on the filing of motions and the mailing of notices connected to those motions concerning the collection of a debt that had already been reduced to judgment and did not arise out of a communication related to Defendants' sale or lease of goods or services. Defendants' motions are not barred by ORS 31.150(3).

## III. The Challenged Statements Are Covered by the Anti-SLAPP Statute

As noted, the anti-SLAPP analysis begins with a determination of whether the challenged statement or conduct is within one of the categories covered by the anti-

SLAPP statue. *Gardner*, 563 F.3d at 986. In relevant part, Oregon's anti-SLAPP statute provides that a special motion to strike may be made against any claim in a civil action that arises out of:

(A) Any oral statement made or written statement or other document submitted in a legislative, executive or judicial proceeding or other proceeding authorized by law;

(B) Any oral statement made, or written statement or other document submitted, in connection with an issue under consideration or review by a legislative, executive, or judicial body or other proceeding authorized by law;

(C) Any oral statement made, or written statement or other document presented, in a place open to the public or a public forum in connection with an issue of public interest; or

(D) Any other conduct in furtherance of the exercise of the constitutional right of assembly, petition or association or the constitutional right of free speech or freedom of the press in connection with a public issue or an issue of public interest[.]

ORS 31.150(2)(a).

To determine whether a claim arises out of conduct that comes within the scope of protected activity, a court "examine[s] the conduct that is targeted by the claims in the complaint." *Dep't of Hum. Servs. v. Lindsey*, 324 Or. App. 312, 318 (2023) (internal quotation marks and citation omitted). "To 'arise out of' the conduct described in [ORS 31.150(2)], the act underlying the claim itself must habe been an act in furtherance of the right to petition and not just associated with it." *Id.* (internal quotation marks and citation omitted).

Here, Plaintiffs' OUDCPA claim alleges that Defendants "proceeded towards selling an interest in Plaintiff's family home without an intention of paying Mr.

Sandoval's full homestead exemption"; threatened to sell the Mr. Sandoval's interest in the home; and "willfully communicated that attorney fees would be added to the alleged debts." FAC ¶¶ 91-95. More specifically, Plaintiffs' claim is premised on the filing, mailing, and eventual service of the sale motion, along with the related notices in Case No. 22CV39304. FAC ¶¶ 34, 36, 38-41, 43-44, 46.

Plaintiffs' UTPA claim is even more direct and is based on Hershner's "willful motion to sell Plaintiff's Residence." FAC ¶ 81.

The Oregon Court of Appeals has held that ORS 31.150(2) "plainly covers statements made or documents submitted in connection with a case after it comes under consideration by a court, such as, for example, pleadings filed with a court or statements made by an attorney or a witness at a hearing." *Deep Photonics Corp. v. LaChapelle*, 282 Or. App. 533, 543-44 (2016) (internal quotation marks omitted); *see also Cagle*, 761 F. Supp.3d 1357, 1363-64 (D. Or. 2025) (finding that the filing of lis pendens was a written statement or writing made in connection with an issue under consideration by judicial body).

The statements that give rise to the OUDCPA and UTPA claim were writings, filings, and notices made in connection with and "arise out of" a judicial case, Case No. 22CV39304, that was actively under consideration by the Jackson County Circuit Court. These writings clearly fall within the bounds of ORS 31.150(2)(a). Defendants have therefore met their burden on the first step of the anti-SLAPP analysis for both the OUDCPA claim and the UTPA claim.

## IV.    Legal Sufficiency of the Claims

Having determined that the case falls within the bounds of the anti-SLAPP statute, the Court must now address the second stage of the analysis. Because this claim is brought in federal court and Defendants challenge only the legal sufficiency of Plaintiffs' state law claims, the Rule 12(b)(6) standard will apply. *Planned Parenthood*, 890 F.3d at 834.

### A. OUDCPA

The Amended Complaint alleges that Defendants violated three specific provisions of the OUDPCA—ORS 646.639(2)(k), (m), and (n). FAC ¶¶ 93-95. In relevant part, the OUDCPA provides that a debt collector engages in an unlawful collection practice if, while attempting to collect the debt, the debt collector:

> (k) Attempts or threatens to enforce a right or remedy while knowing or having reason to know that the right or remedy does not exist, or threatens to take any action that the debt collector in the regular course of business does not take.

> \* \* \*

> (m) Represents that an existing debt may be increased by the addition of attorney fees, investigation fees or any other fees or charges if the fees or charges may not legally be added to the existing debt.

> (n) Collects or attempts to collect, by any means, including through legal action, interest or other charges or fees that exceed the actual debt unless the agreement contract or instrument that creates the debt expressly authorizes, or a law expressly allows, the interest or other charges or fees. A debt collector may not be held liable under this paragraph if the debt collector shows by a preponderance of evidence that the violation was not intentional and resulted from a bona fide error notwithstanding the maintenance of procedures reasonably adapted to avoid any such error. The fact that the debt collector obtains a judgment for less than the amount sought in the complaint, or fails to obtain a

judgment at all, does not by itself constitute evidence of a violation of this paragraph.

ORS 646.639(2)(k), (m), (n).

### 1. ORS 646.639(2)(k)

Plaintiffs allege that Defendants violated the ORS 646.639(2)(k) by (1) "willfully scaring Plaintiffs into believing they would sell their family home" when it is not Defendants' practice to sell judgment debtors' homes; (2) "willfully threatening to sell the interest of a third party Jose Rogelio Hernandez in [Plaintiffs'] home knowing no such remedy existed"; and (3) "willfully scaring Ms. Pereschica into believing they could sell the family home although [Defendants] both knew or had reason to know the remedy to sell the entire home did not exist." FAC ¶¶ 92-94.

With respect to the alleged threat to sell Jose Rogelio Hernandez's interest in the Property, the judicially noticeable documents make it clear that the inclusion of Hernandez in the opening section of the document is a scrivener's error and every other part of the document, including the caption make is clear that it was Mr. Sandoval's interest in the Property that was at issue. In addition, even if it were not scrivener's error, it is not clear how Plaintiffs would have standing to challenge a threat to sell a third party's non-existent interest in the Property.

In general, the claim otherwise challenges the filing of the motion to sell the property to satisfy Mr. Sandoval's judgment debt and the notices sent to Plaintiffs to inform them of the motion.

The Oregon Supreme Court has held that, although sections of the OUDCPA forbid pressuring a debtor with the threat of legal action, "no paragraph [of the

OUDCPA] suggests that *actually* filing a legal action is prohibited" because "filing a legal action resolves issues surrounding the debt in a proper manner, not duplicitously or coercively." *Porter v. Hill*, 314 Or. 86, 94 (1992) (emphasis in original); *see also Manifold Bus. and Investment, Inc. v. Wroten*, 116 Or. App. 573, 577 (1992) ("ORS 646.639(2)(k) is not violated by bringing a claim or action to collect a debt that the claimant knows or has reason to know does not exist."). The Oregon Court of Appeals clarified that the reasoning of *Porter* applies "equally to all debtor-creditor arrangements regardless of their source, or to all civil actions, regardless of their form," and further that "generically, the invocation of the judicial process is not a pursuit of a 'remedy' proscribed by ORS 646.639(2)(k)." *Manifold*, 116 Or. App. at 577, n.2.

ORS 646.639(2)(k) applies to "only particular abusive methods of debt collection" that are extrajudicial, such as when a utility company attempted to collect a debt by terminating services or when a bank froze the debtor's checking account in order to enforce collection of the debtor's debt to a different bank. *Pro Car Care, Inc. v. Johnson*, 201 Or. App. 250, 257-58 (2005) (citing *Isom v. P.G.E.*, 67 Or. App. 97 (1983) and *Rowe v. Bank of the Cascades*, 68 Or. App. 490 (1983)).

Here, Defendants had the right to file a motion for authorization of the sale of residential property to satisfy a judgment debt under ORS 18.906 and that right is expressly invoked in the caption of the motion itself. Ripp Decl. Ex. 3. The motion also states that it seeks "an order authorizing the sale of Defendant's [i.e., Mr. Sandoval's] interests in real property located at 7864 Laura Lane, White City, OR

97503." *Id.* at 3.  Defendants were also required by ORS 18.908 to mail a notice of the motion to the property in a particular statutory form.  ORS 18.908.

Plaintiffs' allegation that Defendants intended to sell the home without paying Mr. Sandoval's full homestead exemption, FAC ¶ 91, is similarly belied by the contents of the motion, which expressly references the homestead exemption.  Ripp. Decl. Ex. 3, at 3.  Plaintiffs also assign considerable weight to the fact that the motion and notices only identified a homestead exemption of $50,000, but the parties do not dispute that that was the allowed homestead exemption at the time the motion was filed in August 2024.

The Court concludes that the filing of the motion and notices were and "invocation of the judicial process," and so the reasoning of *Porter*, *Manifold*, and *Pro Car Care* will serve to bar Plaintiffs' claim under ORS 646.639(2)(k).  Defendants' motion to dismiss under Rule 12(b)(6) and special motion to strike under Oregon's anti-SLAPP statute are GRANTED and this claim is dismissed.

## 2.  ORS 646.639(2)(m) and (n)

Plaintiffs allege that Defendants violated ORS 646.639(2)(m) and (n) by communicating that attorney fees would be sought when there was no right to sell either the Property or Mr. Sandoval's interest in the Property and because there was no right to attorney fees against Ms. Pereschica.  FAC ¶ 95.

The motion to sell the Property does not, by its plain terms, seek attorney fees from Ms. Pereschica.  Rather, it asserts that Selco "should be awarded its reasonable attorney fees and costs for pursuing this motion *on the same grounds that reasonable*

*attorney fees and costs were allowed in the underlying judgment.*" Ripp Decl. Ex. 3, at 3 (emphasis added). The underlying judgment was against Mr. Sandoval and included an award of attorney fees pursuant to ORS 20.082, which governs the award of attorney fees to the prevailing party in a claim on a contract. *Id.* at 8. The judgment was against Mr. Sandoval alone. There is nothing indicating that attorney fees were ever sought against Ms. Pereschica.

Plaintiffs argue that it would be "numerically impossible" for the sale "to generate any value for the creditor beyond the exemption." Pl. Resp. 20. Defendants dispute this assertion, but it is, in any event, irrelevant. The sale of the property is a remedy expressly authorized by law. ORS 18.912(2). Relatedly, the Amended Complaint also alleges that "it would be a bad financial decision on [Defendants'] part" to seek to sell the Property and that "[s]uch a bad financial decision by SELCO would be in violation of its fiduciary duties to provide for the financial well-being and act in the best interests of the members of its credit union." FAC ¶ 63. What return Defendants might realize on the sale is, at this point, unknowable and irrelevant. Furthermore, it is not at all clear that Plaintiffs would have standing to assert such a breach of fiduciary duties.

Finally, Plaintiffs once again raise the issue of the homestead exemption amount. As the Court previously noted, the $50,000 figure was the correct amount for the homestead exemption in August 2024, when the motion was filed and the notices were mailed.

The Court concludes that Plaintiffs have failed to state a claim under either ORS 646.639(2)(m) or (n). Defendants' motions to dismiss and special motions to strike are GRANTED as to this claim.

## B. UTPA and Litigation Privilege

As, previously noted, a plaintiff opposing an anti-SLAPP motion must overcome substantive defenses that would prevent the plaintiff from stating a claim under Rule 12(b)(6) and one such substantive defense is litigation privilege. *Cagle*, 761 F. Supp.3d at 1364.

"Oregon courts have long recognized, and enforced, an absolute privilege for statements [made] in the course of or incident to judicial and quasi-judicial proceedings." *Mantia v. Hanson*, 190 Or. App. 412, 417 (2003). That is, parties and their attorneys have absolute privilege for all "conduct undertaken in connection with litigation." *Id.* at 423. Litigation privilege initially arose as a bar to defamation claims and has since been extended to bar "any tort action." *Id.* at 423, 426 (internal quotation marks and citation omitted).

"The privilege is based upon a public policy of securing to attorneys as officers of the court the utmost freedom in their efforts to secure justice to their clients," and it attaches to "statements made in the proceeding itself," including "statements in pleadings," *Troutman v. Erlandson*, 286 Or. 3, 7-8 (1979) (en banc), as well as to "statements made in advance of litigation." *Wollam v. Brandt*, 154 Or. App. 156, 163-64 (1998) (internal quotation marks and citation omitted).

Courts in this District have found that litigation privilege applies to statutory tort claims brought under the UTPA.[9] *Nyberg v. Portfolio Recovery Assocs., LLC*, Case No. 3:16-cv-00733-JR, 2024 WL 4355482, at *5-6 (April 11, 2024), *findings and recommendation adopted* 2024 WL 4345734, at *3 (Sept. 27, 2024); *Graham v. U.S. Bank Nat'l Ass'n*, No. 3:15-cv-0990-AC, 2015 WL 10322087, at *16 (D. Or. Dec. 2, 2015), *report and recommendations adopted* 2016 WL 393336 (D. Or. Feb. 1, 2016).

Here, Plaintiffs allege that Hershner violated the UTPA through its "willful motion to sell Plaintiff's Residence here it could not in fact be sold." FAC ¶ 81. A motion is plainly conduct undertaken in connection with the litigation. As such, the claim is barred by absolute litigation privilege and Hershner's motion to strike the UTPA claim is GRANTED and the Court need not address Hershner's challenge to the legal sufficiency of the UTPA claim.

## V.    Attorney Fees

Defendants also seek an award of attorney fees pursuant to ORS 31.152(3), which provides that a defendant who prevails on an anti-SLAPP special motion to strike under ORS 31.150 "shall be awarded reasonable attorney fees and costs." ORS 31.152(3). Here, for the reasons set forth above, Defendants have prevailed on their special motion to strike and so are entitled to their reasonable fees and costs. *See Northon v. Rule*, 637 F.3d 937, 937 (9th Cir. 2011) (holding that a prevailing party's

---

[9] Plaintiffs raise the Oregon Supreme Court's decision in *Gordon v. Rosenblum*, 361 Or. 352 (2017) in their challenge to Hershner's invocation of litigation privilege. *Gordon* was a declaratory judgment action challenging whether the Oregon Attorney General could pursue an enforcement action against the plaintiff law firm for violation of the UTPA. Litigation privilege is not discussed in the case.

right to fees under Oregon's anti-SLAPP statute was a substantive right that applied in federal court).

Because Defendants are entitled to their fees and costs under the terms of ORS 31.152(3), the Court does not reach whether Defendants might have been entitled to fees under ORS 646.638(3) or ORS 646.641(2).

## CONCLUSION

For the reasons set forth above, Defendants' partial Motions to Dismiss and Special Motions to Strike, ECF Nos. 14, 16, are GRANTED and Plaintiffs' UTPA and OUDCPA claims are DISMISSED. Defendants are entitled to their reasonable attorney fees and costs.

It is so ORDERED and DATED this ____30th____ day of March 2026.


     /s/Ann Aiken
     ANN AIKEN
     United States District Judge